UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

HAROLD HUBBARD,                    )
                                   ) No. CV-06-0085-MWL
            Plaintiff,             )
                                   ) ORDER GRANTING DEFENDANT'S
v.                                 ) MOTION FOR SUMMARY JUDGMENT
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social             )
Security,                          )
                                   )
            Defendant.             )
                                   )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on November 13, 2006. (Ct.
Rec. 9, 16).  Harold Hubbard ("Plaintiff") filed a reply brief on
October 30, 2006.  (Ct. Rec. 18).  Attorney James T. Solan
represents Plaintiff; Special Assistant United States Attorney
Leisa Wolf represents the Commissioner of Social Security
("Commissioner").  The parties have consented to proceed before a
magistrate judge.  (Ct. Rec. 3).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).

**JURISDICTION**

On December 1, 2000, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since January 1, 1998, due to back pain and headaches. (Administrative Record ("AR") 57-59).[1] Plaintiff's protective filing date for DIB is June 29, 2000. (AR 78). The application for DIB was denied initially and on reconsideration. A hearing was held before Administrative Law Judge ("ALJ) Richard Hines on October 17, 2002. A partially favorable decision was issued on January 15, 2003. (AR 236-245). The ALJ found that as of September 1, 2002, plaintiff was unable to perform sedentary work on a consistent, sustained basis. (AR 243). Plaintiff sought review of the portion of the ALJ's decision that found he was able to perform a wide range of work at the sedentary level before September 1, 2002.

The Appeals Council affirmed the ALJ's finding that plaintiff was disabled as of September 1, 2002, but remanded for further consideration of disability from the date of onset until September 1, 2002. Accordingly, a supplemental hearing was held on February 17, 2005. In his second decision issued on March 11, 2005, the ALJ again found that plaintiff was not disabled before September 1, 2002. (AR 18-24). The Appeals Council denied a request for review on February 6, 2006. (AR 8-11). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 3, 2006. (Ct. Rec. 1).

---

[1] The Commissioner's brief mistakenly lists the alleged date of onset as June 1, 1999.

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 52 years old on the date of the ALJ's decision, has a high school education and three years of college, and has past work experience as a construction millwright. (AR 19).

The ALJ's decision notes that plaintiff testified at the administrative hearing held on October 17, 2002, that he worked as a millwright at a paper mill from 1992 to 1997.[2]  (AR 241). Plaintiff indicated that, in 1999, he worked for approximately three months driving a taxi one to two days a week. He had to stop doing this work because he experienced pain getting in and out of the taxi and could not pick up people's bags. Plaintiff testified that he is unable to work due to migraine headaches, groin pain, and a pinched nerve in his hip. (AR 241).  According to plaintiff, he suffered two broken vertebrae in 1997, but did not receive workman's compensation.  Plaintiff prepared his own food, bought groceries, drove, and maintained a campsite where he lived.  At the time of the first hearing, plaintiff had not received any psychological or psychiatric counseling and his physicians did not indicate that he needed any mental health treatment. Plaintiff had not undergone physical therapy. (AR 241).

According to the ALJ's first decision, plaintiff stated that he had trouble sitting for more than 20 minutes at a time and would be unable to sit throughout a normal workday. (AR 241).

---

[2]  The tape from the first administrative hearing has apparently been lost. The references to the record are from the first ALJ decision dated January 15, 2003.

At the first hearing, the ALJ heard the testimony of medical expert Glen Almquist and of vocational expert Diane Kramer. (AR 236). Following the hearing, the ALJ issued a partially favorable decision on January 15, 2003, finding plaintiff disabled after September 1, 2002. (AR 236-245).

Following a remand order from the Appeals Council, the ALJ was directed to determine whether plaintiff was disabled prior to September 1, 2002, after considering the statements of lay witnesses, and after giving plaintiff the opportunity to address the additional evidence and complete the record given that the tape of the first hearing had been lost. (AR 252).

At the supplemental hearing held February 17, 2005, the ALJ mistakenly notes that plaintiff did not attend the hearing. (AR 21). This is clearly erroneous as plaintiff appeared and testified at that hearing.  (AR 288).  At the supplemental hearing plaintiff testified that he was injured when struck by a pipe in April or May of 1997. He did not seek medical treatment because he was a foreman and able to put himself "on light duty without permission." (AR 290). The most pain plaintiff felt after this injury was in his ribs; it was not until August that he experienced severe groin pain and realized that something else was wrong. (AR 291). After being hit by the pipe, plaintiff "was never really fully back to functional." (AR 291). According to the plaintiff, pain made it hard to think about anything; he is not able to handle stress, and he gets migraine headaches when under stress. (AR 291-292).  Plaintiff has experienced this since 1999. (AR 292).  Pain is aggravated by stress and plaintiff finds it difficult to be optimistic. (AR 292). He "seem[s] to be crying all

the time," at least since 1999. (AR 293).[3]

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If plaintiff does not have a severe impairment or combination

---

[3] The same ALJ conducted both hearings and wrote both decisions referred to herein.

of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work he has performed in the past.  If plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498

(9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of an ALJ's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [ALJ's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the ALJ.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If

evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the ALJ is conclusive.  *Sprague v. Bowen*, 812 F. 2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ's second decision adopted and incorporated by reference the medical summary and medical findings from the first decision. (AR 20). As a preliminary matter, the ALJ noted that plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through December 2003. (AR 19).  At step one the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date.  (AR 20).  At step two, the ALJ determined that plaintiff has the severe impairments of back pain and migraine headaches, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listed impairments.  (AR 21).

The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work prior to September 1, 2002. (AR 21, 23).  He found that plaintiff could lift and carry 10 pounds, and could sit 6 hours out of an 8 hour

1  day with 2 hours standing and walking. (AR 21, 23).

2      At step four of the sequential evaluation process, the ALJ

3  found that, based on plaintiff's RFC, he could not perform his

4  past relevant work as a construction millwright.  (AR 22).  At

5  step five, the ALJ applied the Grids[4] and found that plaintiff was

6  not disabled within the meaning of the Social Security Act prior

7  to September 1, 2002.  (AR 22).

8                              **ISSUES**

9      Plaintiff contends that the ALJ erred as a matter of law.

10 Specifically, he argues that:

11     1.   The ALJ erred by failing to properly characterize the

12 opinions of plaintiff's treating physicians;

13     2.   The ALJ failed to properly credit the opinion of David

14 Pounds, Ph.D.;

15     3.   The ALJ erred by failing to call a medical expert to

16 testify at the supplemental hearing;

17     4.   The ALJ failed to properly weigh the lay testimony;

18     5.   The ALJ failed to properly supplement the record; and

19     6.   The ALJ erred by relying on the Grids rather than

20 calling a vocational expert at step five.

21 (Ct. Rec. 10, pp. 4-8).

22     This court must uphold the ALJ's determination that plaintiff

23 was not disabled prior to September 1, 2002 if the ALJ applied the

24 proper legal standards and there is substantial evidence in the

25 record as a whole to support the decision.

26                            **DISCUSSION**

27 _____

28     [4]Specifically, the ALJ relied on Medical-Vocational Rule 201.21 as well
   as Social Security Ruling 96-2p (medical/treating source opinion evidence).
   AR 22.

**A.   Weighing Opinions of Treating Physicians**

Plaintiff argues that the ALJ erred by failing to properly characterize the opinions of his treating physicians.  (Ct. Rec. 10, pp. 5-8).  Plaintiff contends that the ALJ mistakenly credits treating physicians with opining that plaintiff could perform sedentary work, and fails to credit their notations with respect to his pain.   The Commissioner responds that the ALJ properly weighed the opinions of plaintiff's treating physicians.  (Ct. Rec. 17, pp. 12-13).

A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).   To reject the opinion of a treating or examining physician the ALJ must have evidence to support the decision such as laboratory test results, contrary reports from other physicians of record, or testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.

The ALJ stated that plaintiff first sought medical attention for back and groin pain in August of 1997. (AR 20). No significant findings were noted, and plaintiff was observed exhibiting considerable pain behaviors while clinical and objective diagnostic findings were minimal for any significant abnormality. (AR 20). The ALJ noted that while degenerative disc disease (natural age-process) and ankylosing spondylitis were later

indicated, the plaintiff was repeatedly assessed as having a "light" level functional capacity by medical sources. (AR 20, citing Exhibits 11F-18F).

The ALJ considered the results of five physical evaluations by treating physician John Collins, M.D., from August 2, 1999 through October 18, 2002. (Exhibits 11F -15F, which is AR 157-166). In the first, dated August 2, 1999, Dr. Collins opined that plaintiff would be able to work at the sedentary level at least half-time but also opined that he could not work at least half-time for 8 to 12 weeks. (Exhibit 11F which is AR 157-158). On December 12, 1999, Dr. Collins opined that plaintiff could work at the light or sedentary level at least half time and felt that he could be released for work, presumably full-time, in May 2000. He noted that plaintiff was not currently participating in treatment because he is not able to afford or tolerate medication. (Exhibit 12F which is AR 159-160).

Dr. Collins' next physical evaluation took place on April 20, 2000. (Exhibit 13F which is AR 161-162). He again opined that plaintiff could work at least half-time at the light and sedentary exertion levels but also noted that he expected plaintiff could not perform at least half-time for 24 weeks. (AR 162). On May 8, 2001, Dr. Collins again indicated plaintiff's ability to work at least half-time at the light and sedentary levels. A handwritten note on the side of the evaluation indicates a phone call with Dr. Collins and the note "No clear improvement. Permanent condition which will not clear client for medium work." (AR 164). Dr. Collins' last evaluation, on October 18, 2002 indicates an ability to work half-time at the light level, "improved," and the estimate

that plaintiff could have been released for work in May 2001. (AR
166).

The ALJ also relied on the assessment of treating physician
Eric Sohn, M.D., who treated plaintiff from June 5, 2002 through
October 9, 2002. (Exhibits 16F and 18F, which is AR 167-171 and AR
174). Dr. Sohn's records from an exam on June 5, 2002 indicate
that plaintiff was directed to continue his medications and return
in two months. (AR 168). On September 6, 2002, Dr. Sohn notes
that plaintiff was doing well in terms of pain control. (AR 170).
An evaluation on September 20, 2002, by a physical therapist and
chiropractor, David Pasino, assessed marked impairment in
functional activities, such as the ability to sit for no more than
30 minutes. (Exhibit 17F which is AR 173). Dr. Sohn signed a
letter stating that he agreed with Mr. Pasino's assessed
limitations. (Exhibit 18F which is AR 174).

The ALJ considered all of the opinions of the treating
physicians and examining physicians, and explicitly gave the
greatest weight to the physician who treated plaintiff the
longest, his primary care physician, Dr. Collins. (AR 20-21, 238-
240, 242). Although Dr. Collins' assessments were sometimes
confusing, in that he appeared to assess plaintiff as able to work
at least half-time at the light and sedentary levels, while at the
same time indicating the date by which he expected plaintiff to be
able to work at least half-time, the ALJ also noted that the
medical records show that plaintiff's impairment findings were
minimal, supporting Dr. Collins' apparent assessment that
plaintiff could perform work at the light or sedentary levels. (AR
21). The ALJ found it significant that, other than presenting

himself for evaluation for continued receipt of public assistance
in May 2001, plaintiff did not seek or otherwise require any
medical treatment for his alleged disability (back pain and
headaches) for nearly two years - November 2000 to June 2002. (AR
20).   The ALJ also noted, when weighing the medical evidence, that
Dr. Collins referred plaintiff to Dr. Lamb, a specialist in
physical medicine, in June 2000 . (AR 239). Dr. Lamb ordered a
bone scan which revealed only increased activity in L1 and L3.
Plaintiff's lab test for HLA B27 was positive, and x-rays revealed
fairly significant advancement of degenerative disease at L1-2 and
L2-3. (AR 239). Dr. Lamb recommended that plaintiff see a
rheumatologist for evaluation of possible spondyloarthropy. (AR
239).

The ALJ notes rheumatologist Dr. Butler evaluated plaintiff
on August 2, 2000. (AR 239). Plaintiff reported that he broke two
right ribs in his initial injury, and when the pain subsided he
noted low back pain. (AR 239). He reported living in the woods and
doing "some bicycling." (AR 239). Dr. Butler diagnosed ankylosing
spondylitis which "antedated his industrial accident," was
triggered by genetic factors, and was unrelated to trauma. (AR
239).   A lumbar spine MRI on August 28, 2000, revealed
degenerative discs at L1-2 and L2-3, possible mild compression
deformity at L3-4, and far lateral disc herniation at L5-S1 on the
left. (AR 239). The ALJ observes that plaintiff returned to Dr.
Butler on September 11, 2000 reporting improvement in his
headaches with the use of hydrocodone. (AR 239, citing Exhibit 6F
which is AR 127-130).   Dr. Butler opined that "every effort to
encourage Mr. Hubbard to remain as physically active as possible"

should be made. (AR 127).  The ALJ points out that there is no record of plaintiff returning to Dr. Butler thereafter. (AR 239).

The medical expert's opinion is consistent with Dr. Collins' apparent assessment of an RFC for light or sedentary work. The ALJ's first decision notes that Glen Almquist, M.D., reviewed the medical evidence and diagnosed plaintiff as suffering from musculoskeletal pain, probable ankylosing spondylitis and degenerative arthritis of the lumbosacral spine. Dr. Almquist opined that plaintiff's pain would limit him to no more than sedentary work requiring lifting or carrying no more than 5 pounds frequently or more than 10 pounds occasionally, no more than occasional bending, stooping or crawling, standing and/or walking no more than 4 hours in an 8 hour day and prohibiting exposure to unprotected heights or to moving machinery. (AR 240). The ALJ notes that plaintiff's brain MRI, MRA and CT scan revealed no evidence of migraine. (AR 240-241). Dr. Almquist testified that the record did not indicate that plaintiff required a psychological evaluation. (AR 241).

In weighing Dr. Collins' apparent RFC for light work, the ALJ notes that other than an exam in May of 2001 for continued receipt of public assistance, plaintiff sought no medical attention from November of 2000 to June of 2002. (AR 20).

The ALJ's finding that plaintiff was able to work at the sedentary level before September 1, 2002 is supported by the opinions of plaintiff's treating and examining physicians, and by the results of objective testing.

**B.    The ALJ properly weighed Dr. Pounds' Opinion**

Plaintiff argues that the ALJ erred by failing to properly

credit the opinion of David Pounds, Ph.D. (Ct. Rec. 10, pp. 5-8). The Commissioner responds that the ALJ properly accorded the opinion little weight since it was dated February 2003 and the sole issue on remand was plaintiff's limitations before September 1, 2002. (Ct. Rec. 17, p. 13).

Dr. Pounds examined plaintiff on January 17, 2003. (AR 270-279).  He noted that when asked about the basis of his claim, plaintiff said he experiences migraine headaches and back problems. (AR 270).  He said that he had two broken vertebrae. He added that he experiences problems with both hips, severe groin pain, high blood pressure, a bad stomach with acid reflux, left knee pain, and both legs go numb. (AR 270). He said that he also experiences depression, anxiety, and problems with memory and concentration. (AR 270). Plaintiff reported that his single longest job was between 1992 and 1997, when he was injured by being hit by a 2000 pound pipe. He reported to Dr. Pounds that he did not go to the doctor at that time. (AR 271).

Plaintiff told Dr. Pounds that he lives by camping out in the mountains, receives public assistance, and gets along with others unless he has a migraine headache. (AR 271-272).  Dr. Pounds observed that plaintiff's results on the Beck Depression Inventory revealed scores in the "severe depression range." (AR 274). Dr. Pounds diagnosed plaintiff with major depressive episode recurrent, pain disorder associated with both psychological factors and a general medical condition (provisional), somatoform disorder NOS, and a personality disorder NOS. He assessed a GAF of 45. (AR 276).

The ALJ rejected Dr. Pounds' opinion with respect to

plaintiff's "mental health/psychological impairment conditions or limitations" noting, "there has been no evidence or indication that the claimant has any significant limitations in his activities of daily living, social functioning, or concentration, persistence and pace prior to September 2002." (AR 21, citing 20 C.F.R. §§ 404.1521 and 416.921).  The ALJ is correct. Nothing in the record indicates that plaintiff described symptoms of depression or other mental impairments to any of his treating or examining physicians until Dr. Pounds' examination on February 10, 2003. Because the narrow issue for the ALJ following remand by the Appeals Council was whether plaintiff was disabled prior to September 1, 2002, and Dr. Pounds' 2003 evaluation was the only medical evidence of any mental impairment, the ALJ was entitled to reject the opinion as contrary to all of the contemporaneous medical evidence related to plaintiff's condition prior to September 2002.[5]

**C.    Failure to Present Medical Expert's Testimony**

Plaintiff contends that the ALJ erred by failing to present the testimony of a medical expert at the supplemental hearing. (Ct. Rec. 10, pp. 5-8). The Commissioner responds that the ALJ was not required to request testimony from another medical expert. (Ct. Rec. 17, pp. 14-15).

As noted, Glen Almquist, M.D., testified at the first hearing and the ALJ adopted and incorporated by reference the medical findings from the first hearing. Plaintiff cites no authority for the contention that the ALJ was required to call a second medical

---

[5] Dr. Pounds does not indicate that his diagnosis applies to plaintiff's condition prior to September 2002.

expert to testify. Accordingly, this claim fails.

**D.    Weighing Lay Testimony**

Plaintiff contends that the ALJ improperly discounted the lay testimony. (Ct. Rec. 10, pp. 4-5, 7-8). The Commissioner responds that the ALJ properly weighed the lay testimony. (Ct. Rec. 17, pp. 15-16).

The ALJ noted that the three lay witness statements are all undated, not specific, and could be characterized as "character statements." (AR 20). The first, from Jolean and Kent Chapin, states that they have known plaintiff for more than five years. (AR 87). The Chapins knew plaintiff "when he was in good physical condition" and steadily employed. (AR 87). The Chapins "are also witnesses to the physical problems" plaintiff suffered since his accident while on the job a few years ago. (AR 87). The letter indicates that plaintiff has been on pain medication since the accident and "it is obvious he is still in constant pain." (AR 87). Plaintiff walks with a limp because of his back pain and he complains that his headaches are constant. (AR 87). He visits every one to three months, and lives in his camper going from campground to campground. (AR 87). The writer opines that the accident ruined plaintiff's life "physically and financially and he received no compensation." The Chapins opine that "what that company did to [plaintiff] was terribly unjust." (AR 87).

Lay witness Sheila Rutherford states that she has also known plaintiff for about five years. (AR 88). "He has deteriorated drastically since then, losing his health, his home and becoming increasingly depressed and withdrawn." She notes that he has been living in his truck out in the woods, and fears for his mental and

- 17 -

physical well-being. Ms. Rutherford also indicates that plaintiff is an honest person and well deserving of any assistance. (AR 88).

Lay witness Eric Wilson states that he has known the plaintiff for eight years. (AR 89). They worked together on a job. Mr. Wilson opines that plaintiff has always been honest, conscientious, hardworking and a team player. (AR 89). Mr. Wilson notes that plaintiff received an injury several years ago and it has worsened over time. "His pain, lower back, hips and unbearable migraines have affected his self esteem and mood." (AR 89).  Mr. Wilson states that plaintiff has been homeless for two years, and constantly moving his truck is stressful. He opines that plaintiff is honest and in dire need of assistance due to his physical and mental pain. (AR 89).

An ALJ may not ignore or reject lay testimony without providing reasons, supported by substantial evidence, that are germane to each witness. *See Dodrill v. Shalala*, 12 F. 3d 915, 919 (9th Cir. 1993). The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).

The ALJ observed that the lay witness testimony is undated and inconsistent with the medical evidence. (AR 20-21).  Both are legitimate reasons supported by substantial evidence.  While

plaintiff claims that the lack of dates on the letters is insignificant, the lack of dates within the body of and at the top of the letters makes it difficult to assess the time frame of the limitations described. Because the ALJ's duty on remand was to ascertain whether plaintiff was disabled before September 1, 2002, the lack of specificity as to dates makes the evidence far less useful. The ALJ is correct that the vague limitations described by plaintiff's friends are not consistent with the medical evidence, including the results of objective testing. (AR 20-21).  The ALJ properly evaluated the lay testimony and gave legitimate reasons supported by substantial evidence for rejecting the vague descriptions of plaintiff's limitations.

**E.    Failing to Adequately Develop Record**

Plaintiff contends that the ALJ failed to properly develop the record after the tape of the first administrative hearing was lost. (Ct. Rec. 10, pp. 4,7-8).  At the second hearing, following remand by the Appeals Council, plaintiff failed to request any further development of the record or a continuance to further develop the record.

The duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow proper evaluation of the evidence. *Tonapetyan*, 242 F. 3d 1150. The record was sufficient for the ALJ to make a determination.  Accordingly, plaintiff fails to establish an error by the ALJ with respect to developing the administrative record.

**F.    Relying on Grids in Lieu of VE**

Plaintiff contends that the ALJ erred by relying on the Grids rather than the testimony of a vocational expert. (Ct. Rec. 10, p.

7). The Commissioner responds that the ALJ was not required to rely on a vocational expert because plaintiff had the exertional and non-exertional capacity to perform substantially all of the requirements of sedentary work, and plaintiff's non-exertional (mental) impairments were not supported by credible medical evidence.  (Ct. Rec. 17, pp. 17-20).

The Commissioner is correct that the Guidelines may be applied in the presence of nonexertional impairments that do not significantly erode the occupational base. (Ct. Rec. 17, p. 19, *citing Osenbrock v. Apfel*, 240 F. 3d 1157, 1162 (9th Cr. 2001)(additional citations omitted).

The ALJ based his residual functional capacity assessment on the credible medical evidence, and found plaintiff capable of performing the full range of sedentary work. Because plaintiff was able to perform a full range of work at the sedentary level, and medical evidence did not support finding a severe mental impairment, the ALJ properly relied on the Grids to determine that plaintiff was not disabled before September 1, 2002.

<u>**CONCLUSION**</u>

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that, prior to September 1, 2002, plaintiff was capable of performing sedentary work, is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act prior to September 1, 2002.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED**.

        2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED**.

        3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

    **DATED** this <u>3rd</u> day of January, 2007.


                                    s/Michael W. Leavitt
                                MICHAEL W. LEAVITT
                        UNITED STATES MAGISTRATE JUDGE